**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| JAMES R. ASH | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 6:04-CV-370 |
| | § | |
| JO ANNE B. BARNHART | § | |
| COMMISSIONER OF | § | |
| SOCIAL SECURITY | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff's Brief (Doc. No. 7), Defendant's Brief in Support of the Commissioner's Decision (Doc. No. 8), Plaintiff's Reply Brief (Doc. No. 14), and the Social Security Record filed in this case (cited as "Tr.").

**PROCEDURAL HISTORY**

On February 2, 2001, Plaintiff James R. Ash ("Plaintiff") applied for Disability Insurance Benefits, alleging inability to work due to chronic obstructive pulmonary disease ("COPD") and musculoskeletal disorders. After his claim was denied initially, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 20, 2002. The ALJ denied Plaintiff benefits in a decision issued May 24, 2002. Plaintiff appealed this decision to the Appeals Council. On June 16, 2004, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the ALJ's decision became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). On August 10, 2004, Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Plaintiff disability benefits.

**ISSUES PRESENTED**

Plaintiff contends that the ALJ's decision that Plaintiff was not disabled within the meaning

of the Social Security Act is not supported by substantial evidence and is not based upon the proper legal standards. Specifically, Plaintiff raises the following issues: 1) the substantial evidence does not support the Commissioner's determination of the Plaintiff's residual functional capacity; and 2) the substantial evidence does not support the Commissioner's determination that the Plaintiff can perform other work in the national economy.

## STATEMENT OF THE CASE

Plaintiff contends that he has been unable to engage in substantial work activity since February 1, 2001 due to shortness of breath arising from his COPD and because of other musculoskeletal disorders. Plaintiff was represented at the hearing by an attorney. A vocational expert testified at the hearing.

### Plaintiff's Testimony

Plaintiff testified that he was born on January 12, 1951 and was 51 years old at the time of the hearing. Tr. 182. As for his educational background, Plaintiff graduated from high school. Tr. 198. He also received vocational training on how to pull cable. *Id.*

Plaintiff worked as a janitor for a school district for one week in February 2001 but stopped working there because he had problems with breathing and dizziness due to the chemicals the school used. Tr. 182-83. Before that, for more than a year, Plaintiff worked as a delivery driver for Parts Plus, an auto parts store. *Id.* He stated that he stopped working in that job because he could not breathe and would pass out. Tr. 182-84. Prior to driving for Parts Plus, Plaintiff worked as a janitor for a school district, the same one he later worked at for only a week. Tr. 184. Before that, he worked as a maintenance man, putting in garbage disposals, light fixtures, and generally maintaining apartments. *Id.* Prior to his maintenance work, Plaintiff worked as a courier, delivering medications

to retirement homes statewide. *Id.* Finally, Plaintiff stated that he worked as a communications technician, installing fire alarms, telephones, and communication PA's through schools and businesses by running wires through the ceiling. Tr. 184-85.

Plaintiff testified that all of his past work involved standing more than sitting. Tr. 198. He stated that, in his previous jobs, he stood more than two hours out of an eight hour day. Tr. 198-99. He noted that he probably stood at least three hours out of an eight hour day in the maintenance job. Tr. 199. Plaintiff further testified that he lifted a maximum of 60 pounds at his job driving for the auto parts store. *Id.* He stated that the lifting at the communications technician job involved thousand foot spools, weighing about 40 to 45 pounds; however, he noted that employees lifted these in tandem and one person would not pick up a spool alone. *Id.*

Plaintiff stated that he is unable to work mainly because of his difficulty with breathing. Tr. 186. He complains of shortness of breath and feels pressure like someone is sitting on his chest. *Id.* He stated the shortness of breath is worse when he is on his feet. *Id.* Plaintiff also testified that he has problems walking and guessed that he could walk about 40 yards, and sometimes a shorter distance, before he would have to sit down. *Id.* In short, he stated that "the stress of the walk and carrying something at the same time, the shortness of breath, [and] the dizziness" prevent him from being able to do even a job, such as his courier position, that had the least standing in it. Tr. 200.

As far as daily activities, Plaintiff testified that he stays "a little bit in motion" to keep his "muscle work," he washes dishes a little bit, does laundry, and mainly sits on the back porch. Tr. 193. He testified that he does not get out and does not go to the store or movies. Tr. 194. He explained that he needs to sit down about half way through washing the dishes and that he can only carry a gallon of milk from the carport into the house. Id. Plaintiff claimed he can drive a car, but

he still experiences fainting spells. Tr. 194-95. He stated that his problems were worse in the summertime and explained that "[a]bove 90 degrees it's like you're trying to breathe water." Tr. 195.

Plaintiff takes medication that helps with the shortness of breath. Tr. 187. He uses inhalers when he is away from home and uses a nebulizer three times a day when he is at home. Tr. 187-88. He receives nebulizer treatments at nine in the morning, three in the afternoon, and nine at night, and each treatment usually takes about 25 minutes to complete. Tr. 188.

Plaintiff testified that he had some other injuries prior to his application for disability. Tr. 189. Plaintiff noted that he sustained a right shoulder injury in 1992 and cannot lift more than fifty pounds with his right arm. Tr. 189-90. He also stated that he had neck surgery in 1993 where a fusion was performed on C/5 and C/6. He complains of residual stiffness, soreness, and loss of mobility in his neck. Tr. 190. Plaintiff further testified that he had he previously cut a nerve in his left elbow so that he has no feeling in his ring and pinky fingers of his left hand. Tr. 190-91. Finally, Plaintiff stated that he has been blind in his right eye since 1967 and that he wears a prosthesis in that eye. Tr. 191.

**Medical Records**

The following is a summary of Plaintiff's medical records which are relevant to the issues presented in the instant case. The relevant time period is February 1, 2001, the alleged onset of Plaintiff's disability, through the date of the Appeals Council's decision, June 16, 2004. Plaintiff must demonstrate that he was under a disability on or before June 16, 2004, in order to receive benefits. *See Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990) ("Claimants bear the burden of establishing a disabling condition before the expiration of their insured status").

Plaintiff saw Shelton Hopkins, M.D. on October 1, 1993.  Tr. 162.  Dr. Hopkins indicated that Plaintiff had a 15-pound lifting limit and mild crepitus.  *Id.*  He also reported a 3% impairment rating of the shoulder with a total 18% permanent partial impairment rating to the upper extremity and 11% whole person impairment rating. *Id.*

Plaintiff was first seen for breathing difficulties in March 1997 by William J. Walton, M.D. and was diagnosed with early COPD.  Tr. 158. The records indicate a further diagnosis of asthma and COPD a month later.  Tr. 146.  Plaintiff was put on a course of treatment.  *Id.*

On February 2, 2001, Claim Banjo, M.D. reported that Plaintiff cannot work due to COPD and that he had a poor prognosis. Tr. 123.

On June 21, 2001, Richard David, M.D. diagnosed Plaintiff with mild COPD.  Tr. 134. He also noted previous cervical fusion with somewhat decreased range of motion of the neck and osteoarthritis of both knees.  *Id.*  Dr. David reported that Plaintiff had normal range of motion of the shoulders, elbows, and wrists.  Tr. 134.  He reported that Plaintiff's knees and ankles revealed normal range of motion with no edema, or cyanosis.  *Id.*  Plaintiff had good strength in all his muscle groups.  *Id.*  His knees showed some crepitation with movement bilaterally.  *Id.* An EKG indicated sinus bradycardia, but otherwise was normal. *Id.*  Dr. David did note a limitation in the movement of the 4th and 5th digits on the left hand.  Tr. 132-33.

On February 5, 2002, Dr. Hopkins saw Plaintiff again and reported that Plaintiff needed an exercise program for his shoulder and that he may, in the future, need some reconstruction.  Tr. 161. His examination revealed limitation of movement with the right arm. *Id.*  Dr. Hopkins had performed subacromial impingement surgery on Plaintiff nine years earlier.  *Id.*  He opined that he did not think the C5-6 fusion had been successful.  *Id.*

5

On March 4, 2002, Plaintiff was examined by Jeff Fidone, M.D., a pulmonary specialist. Tr. 173. The chest x-rays showed clear lungs and mild hyperinflation. Tr. 174. Post bronchodilators improved the FEV1 to 2.25 or 54% of predicted and FVC improved to 4.32. *Id.* Dr. Fidone's impression was that Plaintiff has obstructive lung disease in the form of asthma and emphysema and chest heaviness with exertion. Tr. 175.

### Vocational Expert's Testimony

Rebecca Thompson Hayes, a vocational expert ("V.E."), testified that Plaintiff's past relevant work as a school janitor is rated as heavy and unskilled. Tr. 203. Plaintiff's work as a driver for the parts store is considered medium and the low end of semiskilled. *Id.* His courier work driving pharmaceuticals to nursing homes is rated as medium and unskilled. *Id.* As a maintenance worker for an apartment, Plaintiff's work is rated medium and skilled. *Id.* Finally, his work as a communication technician, laying cable, qualified as light and skilled. Tr. 203-05.

The ALJ asked the V.E. if there were any other types of light work that Plaintiff could transfer his skills to. Tr. 206. The V.E. opined that, in the realm of electrical wiring, Plaintiff could transfer that skill to the light job of electrical assembly, including lamp wiring, electrical appliance wiring, and any job with the knowledge of electrical wiring at the light level. *Id.* The V.E. noted that there are 200,000 light assemblers of electrical equipment nationally. *Id.* In Texas, she figured there are 12,000 in various types of jobs. *Id.*

The ALJ asked the V.E. to consider a hypothetical individual who was Plaintiff's age and had Plaintiff's education and work history. *Id.* The ALJ asked the V.E. what that person would have to do in the job of assembler. *Id.* The V.E. stated that the person might use tools to assemble electrical equipment of various types. *Id.* Many of these jobs are in manufacturing environments

and most jobs would generally require standing. *Id.*

The ALJ inquired how much a person would have to stand at these jobs at the light level. Tr. 207. The V.E. stated that the person would have to stand up to six hours out of eight. *Id.* The ALJ inquired about a person being blind in one eye, and the V.E. stated that Plaintiff had been blind since he was a teenager and it wasn't something new that had happened–Plaintiff had performed the wiring in his previous job. *Id.* The ALJ inquired as to the effect of the numbers of available jobs if the hypothetical included a nonpullutant limitation in the workplace atmosphere. Tr. 207-08. The V.E. responded that there could be dust, that the environments were not totally clean. Tr. 208. However, the V.E. stated that they would certainly be cleaner than what Plaintiff had been previously doing. *Id.*

The ALJ then asked the V.E. to consider a hypothetical individual who was Plaintiff's age and had Plaintiff's education and work history, but that also had the limitations with respect to Plaintiff's shortness of breath, with respect to fatigue, and with an inability to stand for long amounts of time. *Id.* The V.E. testified, that considering those limitations, which included pretty limited standing, the person could not do the jobs that the V.E. listed, nor could he do his prior relevant work. Tr. 209. The V.E. stated that, in order to do the jobs she had listed, the judge would have to make a finding that the person had the ability to stand and walk six out of eight hours a day and be able to lift up to 20 pounds. *Id.*

The ALJ then asked the V.E. if there were any light jobs that a person of Plaintiff's age, education and work experience could do if he could only stand and walk two out of six hours a day. *Id.* The V.E. responded that the hypothetical, as presented by the judge, certainly took the person out of the full range of light work and probably into some of the jobs that allow the person to sit or

stand at will. *Id.* According to the V.E., there would be some cashiering jobs and some assembly jobs not using transferable skills, but just jobs that allow a person to sit or stand. Tr. 209-10. However, the V.E. noted that the limitation on standing would erode the numbers of those jobs. Tr. 210.

The V.E. then stated that the numbers of cashier jobs and certain assembly jobs with small items: compact goods, optical goods, watches, blocks, etc. would be eroded to 2600 in Texas and 55,000 nationally. Tr. 210-11. The V.E. stated that those would be the numbers of "sedentary" that allow a sit/stand option. *Id.* According to the V.E., certain jobs would have to be taken out of the "light" and "sedentary" categories because the Dictionary of Occupational Titles ("DOT") does not provide for light jobs with sit/stand options. Tr. 211-12. Instead, according to the V.E., a sit/stand option would be a category unto itself, and the job could be light or it could be sedentary. Tr. 212. For instance, the DOT classifies the job of cashier as a light job. *Id.* Some of the assembly jobs classified by the DOT as sedentary allow a sit/stand option and then others are classified as light and allow a sit/stand option. Tr. 213.

In response to questioning by the attorney representing Plaintiff, the V.E. acknowledged that a sit/stand option would erode the numbers of both light and sedentary assembly jobs by two-thirds. Tr. 215. For instance, the V.E. stated there are 925,000 light unskilled jobs in Texas and 14 million light unskilled jobs nationally. Tr. 217. A hypothetical person who is limited to no more than two hours standing and walking in an eight-hour work day would erode those figures to 300,000 light unskilled jobs in the state of Texas and four and a half million nationally. *Id.* Adding in a limitation of a contaminant-free or reduced contaminant environment where heat is controlled and does not exceed an environment of 90 degrees would further erode the number to 100,000 in Texas. Tr. 218.

Given this hypothetical individual, the V.E. stated that she would focus on placing a person with these limitations in a sedentary job rather than a light exertional level. Tr. 219.

## FINDINGS OF ADMINISTRATIVE LAW JUDGE

The ALJ found that Plaintiff is an "individual closely approaching advanced age" who has a high school (or high school equivalent) education. Tr. 20. He found that transferrable skills are immaterial in this case. *Id.* The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset disability. *Id.*

After review of the medical evidence, consideration of Plaintiff's testimony, and the V.E.'s testimony, as well as consideration of Plaintiff's alleged disabling impairments, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 20. The ALJ noted that Plaintiff had COPD and musculoskeletal disorders, but found that such impairments were not severe enough to meet the Listing of Impairments in the regulations. Tr. 14, 20.

The ALJ concluded that the inconsistencies between Plaintiff's subjective complaints and the objective evidence undermined Plaintiff's credibility regarding his limitations. Tr. 17, 20. The ALJ concluded that Plaintiff could perform light work activity. Tr. 17, 20. This included the ability to stand/walk for two or more hours a day. Tr. 17. The ALJ noted that Plaintiff does need to avoid fumes, gases and a heavily polluted environment. *Id.* Since Plaintiff cannot perform more than light work activity, and he needs a less polluted work environment than in his last job, the ALJ found that Plaintiff cannot return to his past relevant work. Tr. 18, 20. Further, due to Plaintiff's residual functional capacity, the ALJ found Plaintiff to be capable of performing a significant range of light work as defined in 20 C.F.R. § 404.1567. Tr. 18, 20. Based on the V.E.'s testimony and the evidence in the record, the ALJ found Plaintiff could make a successful adjustment to work that

exists in significant numbers in the national economy. Tr. 19, 20.

## STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards. *See, e.g., Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990). Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

However, the reviewing court does not reweigh the evidence, try the issues de novo, or substitute its judgment for the Commissoner's, even if the evidence weighs against the Commissioner's decision. Newton, 209 F.3d at 452. The Court may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Newton*, 209 F.3d at 452. If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. 42 U.S.C. § 405(g); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

## ANALYSIS

The Social Security Act defines "disability" as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. § 404.1520 (1999).  First, the claimant must not be presently working at any substantial gainful activity.  20 C.F.R. § 416.972.  Second, the claimant must have an impairment or combination of impairments that is severe.  An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations.  Fourth, the impairment must prevent the claimant from returning to his past relevant work.  Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520 (b)-(f).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198.  If the claimant meets his burden, the burden shifts at step five to the Commissioner to show that there is other gainful employment that claimant is capable of performing in spite of his existing impairments.  *Id.; Greenspan v. Shalala*, 38 F.3d 232, 236 (5 th Cir. 1994).  If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.  *Crowley*, 197 F.3d at 198.

Here, the ALJ found that Plaintiff was not disabled because, although he could not return to his past relevant work, he had the residual functional capacity to perform a significant range of jobs existing in significant numbers in the national economy, such as electrical assembly.

**Did the ALJ Properly Assess Plaintiff's Residual Functional Capacity and
Plaintiff's Ability to Perform Other Work in the National Economy?**

Residual functional capacity is the maximum a plaintiff can do despite his functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545; SSR 83-10, at 7. The residual functional capacity assessment must identify the claimant's functional limitations or restrictions and assess the claimant's work-related abilities on a function-by-function basis, including the functions in 20 C.F.R. § 404.1545(b) before expressing residual functional capacity in terms of sedentary, light, medium, heavy, and very heavy exertional levels of work. SSR 96-8, at 1. Title 20 C.F.R. 404.1545(b) includes the functions of walking, standing, sitting, pushing, pulling, lifting, carrying, and stooping.

The residual functional capacity assessment must address the claimant's "remaining exertional and nonexertional capacities." SSR 96-8, at 5. Exertional capacity addresses limitations and restrictions of physical strength and defines the remaining "abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* A fact finder must consider each function separately (e.g., the claimant can walk for 5 out of 8 hours and stand for 6 out of 8 hours), even if the final residual functional capacity assessment combines activities (e.g., walk/stand,, lift/carry, push/pull). *Id.* Determining a plaintiff's residual functional capacity is the ALJ's responsibility. *Ripley v. Chater*, 67 F.3d 553, 557 (5th Cir. 1994). Substantial evidence must support an ALJ's determination of a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

Plaintiff argues that the substantial evidence does not support ALJ Finding No. 7, wherein the ALJ determined that Plaintiff had the residual functional capacity ("RFC") for light work

activity, with the need to avoid fumes and pollution. Tr. 20. According to Plaintiff, the RFC finding is confusing in that the ALJ states that Plaintiff is able to stand/walk for "two or more" hours. *Id.* Plaintiff claims it is unclear if the ALJ is finding that Plaintiff has the capacity to stand for six hours out of an eight hour day, which is required for light work (Tr. 209), or if he is limiting the plaintiff to no more than two hours in an eight-hour work day, in line with his hypothetical questions. Tr. 209. Defendant asserts that the ALJ's decision was supported by substantial evidence.

After considering all of the medical opinions in the record, and using Medical-Vocational Rule 202.15 as a framework for decision-making, it appears the ALJ found Plaintiff's complaints and symptoms credible only to the extent that Plaintiff would be limited to a restricted range of light work activity. Tr. 20. The ALJ found that Plaintiff is able to stand/walk for "two or more" hours a day, but he needs to avoid fumes and pollution. Tr. 17, 20. Because of the need to avoid fumes and pollution, the ALJ determined that Plaintiff is unable to perform any of his past relevant work. Tr. 18, 20. Rather, he found that Plaintiff has the residual capacity to perform a significant range of light work. Tr. 18, 20. However, the ALJ further determined that Plaintiff's exertional limitations do not allow him to perform the *full range* of light work. Tr. 18, 20.

Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b); SSR 83-10. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id.* The full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday. SSR 83-10. To be considered capable of performing a full or wide range of light work, and individual must have the ability to do substantially

all of these activities.  *Id.*

If the Commissioner makes a decision that the plaintiff can perform less than the full range of some exertional level of work, the Medical Vocational Guidelines do not apply.  *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985).  When the guidelines may not be utilized for decision-making, the Commissioner may only sustain her burden of proof by producing expert vocational testimony concerning the existence and availability of jobs in the national economy which the Plaintiff can perform.  *Id.* (citing 20 C.F.R. P. 404, Sub-part P, App. 2, § 200.000 (e)(1) and (2); *Harrell v. Bowen*, 862 F.2d 471 (5th Cir. 1988); *Fields v. Bowen*, 805 F.2d 1168 (5th Cir. 1986)).  Vocational experts testify by hypothetical questions, and the hypothetical put to the V.E. must conform to the ALJ's finding.  *Herron v. Bowen*, 788 F.2d 1127 (5th Cir. 1986).

In this case, Plaintiff claims the testimony of the vocational expert does not provide substantial evidence to support the finding of the ALJ that the plaintiff can perform other work in the national economy.  Plaintiff states there are a number of problems with the V.E.'s response to a hypothetical question that stated the plaintiff could perform the light work of electrical assembly.  According to plaintiff, that position is semi-skilled, but the ALJ does not identify the transferred skill. Second, when the V.E. responded to the hypothetical, there were no limitations related to fumes or pollutants, that she later conceded would be a problem.  Tr. 208.  Finally, the V.E. testified that if the plaintiff could not stand and walk for a total of six hours in an eight hour workday, then plaintiff could not perform the work she had identified.  Tr. 209-10.

Indeed, when the ALJ asked the V.E. if there were any light jobs that a person of Plaintiff's age, education and work experience could do if he could only stand and walk *two out of eight hours* a day, the V.E. responded that the hypothetical, as presented by the judge, certainly took the person

out of the full range of light work and probably into jobs that allow the person to sit or stand at will. *Id.* The hypothetical presented by the Judge included a limitation of being able to stand and walk for only *two out of eight* hours a day. The V.E. then opined as to the number of light jobs, such as unskilled assembly, that would accommodate a sit/stand option for an individual who is limited to "*no more than two hours*" standing and walking in an eight-hour work day, as set forth in the hypothetical. Tr. 216-17.

As Plaintiff has argued, the subsequent finding by the ALJ that "claimant is able to stand/walk for *two or more hours* a day" is not supported by the hypothetical that the ALJ posed or by the testimony of the V.E. If the ALJ has indeed found that Plaintiff can stand for "two or more hours" out of an eight hour shift, and that Plaintiff therefore has the capacity to stand for six hours out of an eight hour day as required for light work, his findings would not be supported by substantial evidence.

Moreover, the ALJ identified a significant number of jobs, including work as light electrical assembly, of which there are 200,000 jobs in the U.S. and 12,000 jobs in Texas. Tr. 20. The job of electrical assembler, listed as 729.384-026 in the DOT, is rated as light work and notes that physical demand requirements are in excess of those for Sedentary Work. The job further requires finger dexterity, manual dexterity, and motor coordination at "Level 3 - Middle 1/3 of the Population." However, the ALJ gave no weight to Plaintiff's other limitations regarding the difficulty with the use of his left hand 4th and 5th fingers, despite evidence from Dr. William R. Runkle that indicated Plaintiff would have fingering limitations. Tr. 138, 141. It appears that the ALJ did not consider these other impairments as part of the RFC determination, nor did the ALJ address them in his findings as he is required to do.

Finally, the V.E. opined that a hypothetical individual with the same limitations as Plaintiff, including standing no more than two hours, with the added limitations of contaminant and excessive heat, would probably be placed in a sedentary job rather than a light exertional level. Tr. 218-19. Sedentary work, as defined in the regulations, involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a). Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. *Id.* Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *Id.*

A finding of sedentary work would be in line with the testimony of the vocational expert and with the walking/standing for "no more than two hours" hypothetical posed by the ALJ and would have been supported by substantial evidence. However, the vocational expert testified that Plaintiff's skills did not transfer to sedentary work. Tr. 209. The ALJ made a separate finding that "transferable skills are immaterial in this case." Tr. 20.

Rule 201.14 provides for a finding of disability for a claimant who is closely approaching advanced age (50 and over) with past relevant work at the skilled or semi-skilled level, but whose skills are not transferable to other work. 20 C.F.R. Part 404, App. 2, Rule 201.14. There is no dispute as to Plaintiff's age, his skill level, or that his skills are not transferable. Tr. 20. Though the evidence would support an RFC finding of sedentary work, in line with the testimony of the V.E. and the hypothetical of the ALJ, such a finding mandates a finding of disability in this situation.

Once the Commissioner found that the plaintiff could not return to his previous work, the burden shifted to the Commissioner to prove that plaintiff could perform other jobs. Because the decision of the ALJ is not supported by substantial evidence, the decision of the Commissioner of

"no disability" at the Fifth sequential step of the decision-making process should be set aside.

## CONCLUSION

For the reasons stated above, the Court finds that Plaintiff is disabled for purposes of both supplemental security income and disability insurance benefits.  The opinion of the Commissioner is REVERSED.  A final judgment consistent with this opinion shall be issued forthwith.

**SIGNED this 25th day of September, 2006.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE